Philip I. PALMER, Jr., Trustee for Carl Benjamin Schafer, Bankrupt, Appellant,

v.

TRAVELERS INSURANCE COMPANY et al., Appellees.

No. 19966.

United States Court of Appeals Fifth Circuit.

June 25, 1963.

William VanDercreek, Bill E. Brice, and Geary, Hamilton, Brice & Lewis, Dallas, Tex., for appellant.

William P. Fonville, Dallas, Tex., for appellees.

Before CAMERON and BROWN, Circuit Judges, and WHITEHURST, District Judge.

WHITEHURST, District Judge.

There is no apparent dispute concerning the basic facts involved in this appeal. On April 4, 1960, Carl B. Schafer, the bankrupt in these proceedings, had a judgment for $253,161.50 entered against him in the 101st Judicial District Court of Dallas County, Texas. On July 21, 1960 he filed his voluntary petition in bankruptcy, and this appeal is from a proceeding in that bankruptcy action.

That proceeding involved an application by the Trustee in bankruptcy to proceed—first in discovery, and by later application, in litigation—against Schafer's insurance carrier and others for negligent failure to settle the action against Schafer which resulted in the $253,161.50 judgment.

That judgment, meanwhile, had been appealed, but without stay order; and execution issued on July 7, 1960, just prior to the filing of the voluntary peti-

tion. The referee has found that the judgment in the damage suit did not become final earlier than 30 days after February 27, 1962, the date of the issuance of the mandate of the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, Dallas.

The Trustee's various applications to the Referee culminated in an order dated April 23, 1962, which found as a fact and as a conclusion of law in various forms that:

> (1) No right of action for negligent failure to settle the damage suit or other breach of duty existed on the date of the filing of the petition in bankruptcy;
>
> (2) No such right of action vested in the Trustee;
>
> (3) No such right of action is owned by the Trustee.

The basis for such conclusions, and for denial of the relief requested by the Trustee, does not clearly appear from the Referee's decision and order, nor from the confirming order of the District Judge from which this appeal is taken. We gather, from the briefs of the parties to this Court, that the decisions below were bottomed on Appellees' contentions that, under Texas law, no right of action such as the Trustee contemplated here could exist until the judgment in the damage suit became final; and that this did not occur until, at the earliest, 30 days after the mandate of the Appellate Court dated February 27, 1962.

Before we get to the question of whether the Referee and the District Judge acted properly in their interpretation of Texas law, we must consider the question as to their jurisdiction to make that determination.

Under the Bankruptcy Act (Sec. 47, sub. a(1); 11 U.S.C. § 75), it is the mandatory obligation of trustees to collect and reduce to money the property of the estates for which they are trustees. They are to do so "under the direction of the court". But the provision that they shall act under the direction of the court

does not mean that the bankruptcy court should exercise authority to determine the merits of a controversy between the trustee and a third party which are within the jurisdiction of another forum.

■ As a matter of fact, the contrary is true. The bankruptcy court's jurisdiction is established by the recitation of the court's duties under Sec. 2, sub. a of the Bankruptcy Act (11 U.S.C. § 11). Under Sub-Section (7) of that Section the court is required to cause the estates of bankrupts to be collected, reduced to money and distributed "and determine controversies in relation thereto".

It has long been established that this section does not vest jurisdiction in the Bankruptcy Court of civil actions at law or plenary suits in equity. Bardes v. First National Bank of Hawarden, 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175; Mitchell v. McClure, 178 U.S. 539, 20 S.Ct. 1000, 44 L.Ed. 1182; Hicks v. Knost, 178 U.S. 541, 20 S.Ct. 1006, 44 L.Ed. 1183; Wall v. Cox, 181 U.S. 244, 21 S.Ct. 642, 45 L.Ed. 845. As a matter of fact, Section 23, sub. b of the Bankruptcy Act (11 U.S.C. § 46) is a specific limitation on the general jurisdiction granted under Clause (7) of Section 2, sub. a (Hull v. Burr, 153 F. 945, C.A.5). Section 23, sub. b requires that suits by the trustee shall be brought or prosecuted only in courts where the bankrupt might have brought or prosecuted suits if proceedings under the Bankrupty Act had not been instituted, unless by the consent of the defendant.

Thus, it has many times appeared that when property or money has been held adversely to the bankrupt, or where rights of the character referred to by Section 23, sub. b are in controversy with third parties, litigation can only proceed by plenary suit, and not by a summary proceeding in a bankruptcy court. Jackson v. Sports Company of Texas, Inc., 278 F.2d 716, C.A.5; Warder v. Brady, 115 F.2d 89, C.A.4; Shafer v. Hughes, 139 F.2d 438, C.A.8; In re Mount Forest Fur Farms of America, Inc., 122 F.2d 232, C.A.6; In re 671 Prospect Avenue Holding Corp., 118 F.2d

453, C.A.2, cert. den., 314 U.S. 642, 62 S. Ct. 83, 86 L.Ed. 515.

■■ It should be obvious that if the court cannot directly determine the merits of a controversy between the trustee and a third party, it ought not be able to do so indirectly. In this instance, it has done so by determining that the trustee had no right, at a particular moment, to bring an action in some other appropriate forum. In our opinion, this represented a premature determination of a question that was properly in the province of the court which should ultimately determine the controversy which the trustee desired to initiate. In our opinion, the trustee should have been permitted to proceed to try to carry out his obligations under Section 47, sub. a of the Act, even though a bankruptcy court might have deemed it premature or even unwise for the trustee to have proceeded immediately so to do. We do not view Appellees' efforts to block the trustee from so proceeding, as a consent to the bankruptcy court's determination of the entire controversy.

■ The mere fact that bankruptcy courts do have summary jurisdiction of the property of the bankrupt, and can act expeditiously in the protection of bankrupt's estate, and have significant obligations to creditors and to bankrupt debtors to avoid costly and fruitless litigation which might dissipate the bankrupt's estate, should not persuade them to accept obligations which are not, in any ultimate sense, their business. The obligation of the bankruptcy court "to determine controversies" in relation to the estates of bankrupts should reach only to the merits of controversies between adverse parties properly before it, and to matters of undoubted jurisdiction. It should not extend to substantially summary determinations on the merits of a cause which should actually be resolved in another forum by plenary action.

Nor, within the area of our inquiry here, does Section 70, sub. a of the Bankruptcy Act (11 U.S.C. § 110, sub. a)

give the bankruptcy court greater authority. Section 23, sub. b (11 U.S.C. § 46, sub. b) does make an exception of the specific jurisdictional grants to the bankruptcy court in Sections 60, 67 and 70 of the Act, but it does not appear that any of these are invoked here. As we understand Appellees' argument concerning Section 70, sub. a, it is substantially this: Section 70, sub. a provides that the Trustee has title to—

"(5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred  *  *"
etc.

and

"(6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property  *  *  *",

and, therefore, if under Texas law no right of action accrued until after the filing of the petition in bankruptcy, the Trustee has nothing.

Section 70, sub. a is not to be so narrowly construed. The purpose of Section 70 is to spell out what property or rights in property shall belong to the bankrupt's estate, and what rights shall remain the personal property of the bankrupt. For example, under certain circumstances (depending on state law), the Trustee has no right in ex delicto actions for libel and slander, or injuries to the personal property of the bankrupt. These rights, under those circumstances, are deemed to be personal to the bankrupt, he owns them, and only he will have the right to recover on them.

■ But where the statute transfers to the Trustee all "property, including rights of action  *  *  *", it is incumbent on the bankrupt (who, so far as we know did not appear at all in this particular controversy) to show clearly that some interest, right or expectancy should not become a part of the bankrupt's estate—otherwise, whatever claim—including potential and contingent claims—that the bankrupt owns at the time of his petition, becomes a part of his estate, with title thereto in the Trustee.

■ An exception that proves this rule is the instance of a claim owned by the bankrupt that is so weak that it "hardly rises to the dignity of an expectancy, but is rather a mere hope that Congress will make the claimant a donation." Harlan v. Archer, 79 F.2d 673, 677, 679, (C.A.4, 1935). In order that the trustee may, under Section 70, sub. a of the Bankruptcy Act, have any rights at all, it is necessary that an interest or title of some kind be vested in the bankrupt in order that it may pass by operation of law to the trustee, but the decision of the bankruptcy court at this point is merely a question of whether an existing right has passed to the trustee or remains as a personal asset which will continue to belong to the bankrupt despite his bankruptcy. Consequently, the dissent in the Archer case was based on the proposition that it was wrong to hold that if Archer collected, he could retain the proceeds and his creditors would get nothing from the anticipated congressional largess.

The border line between hope and expectancy is further demonstrated by cases such as Horton v. Moore, 110 F.2d 189, 191, C.A.6, 1940, which held that "a possibility coupled with an interest which may or may not become afterwards a vested estate passes to the trustee, if transferable under the local law." In that instance, the bankrupt's right, at the date of adjudication, was contingent on his surviving his mother. It passed to his trustee.

■ More importantly, however, Section 70, sub. a does not give bankruptcy court jurisdiction to evaluate the merits of a claim or interest which has passed to the trustee under Section 70, sub. a. As this Court pointed out long ago, the trustee "may bring a suit without court order or at least the person sued cannot question the propriety of the suit." Lincoln Natl. Life Ins. Co. v. Scales, 62 F.2d 582, 585, C.A.5, 1933.

The anomaly of a different result here is significant. It was, very apparently,

the damage suit judgment which caused the bankruptcy. If some right of action ultimately accrued against the insurance carrier for negligence in permitting the judgment, why should that recovery redound to the benefit of the bankrupt personally, rather than to his creditors? Only a very clear statutory mandate would convince us that Congress intended any such result. It cannot be implied from the language of Section 70, sub. a of the Bankruptcy Act, particularly in view of the limitations on the bankruptcy court's jurisdiction, which are inherent in Section 23, sub. a.

In brief, it was improper for the bankruptcy court, in this instance, to determine what another forum, which would properly try a cause under adversary conditions, might do in the disposition of that cause. As this was the sole basis for its determination not to permit the trustee to proceed, it must be reversed. What the proper forum might have held concerning applicable Texas law, we do not know; and we decline to comment thereon.

Reversed and remanded for further proceedings not inconsistent herewith.

JOHN R. BROWN, Circuit Judge (concurring specially).

I concur in the opinion and the disposition. But if this approach is wrong, then most certainly the judgment in any event would have to be reversed. The Texas statute of limitations as to *when* a suit for damages may be brought by an assured against his insurer for admitted negligence in failing prudently to settle within policy limits has nothing at all to do with the obligations owed by the insurer to the assured. Long before the expiration of the period in which to bring a damage suit for negligent failure to settle, the hapless, helpless assured would have a whole arsenal of effective weapons to bring the negligent insurer to the performance of its obligations. These would include declaratory judgments, third party complaints, or the like. See Smoot v. State Farm Mutual Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525;

American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 5 Cir., 1960, 280 F.2d 453; Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139. These were valuable existing rights which belonged to the Assured and to which the Trustee succeeded. Any other result would be to allow an insurer to default, drive its assured to the wall of bankruptcy, and then blithely advise the estate, the trustee, the assured and all of the creditors that while its duty was breached, there is nothing to be done about it. A statute of limitations as an instrument to prevent fraud can not be ridden that far or that hard. If—and the if is a very tiny one—any other state would countenance such result, I am confident that Texas—whose laws exert an *Erie* control on us as to this aspect of the case—would not.